IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRISTRATA TECHNOLOGY, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-496 (JJF) |
| | ) | |
| INTERNATIONAL SHIELD, INC., and | ) | |
| ABDEL ATTIA | ) | |
| | ) | ▬▬▬▬▬▬▬ |
| Defendants. | ) | |

## PLAINTIFF TRISTRATA TECHNOLOGY, INC.'S STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff, TriStrata Technology, Inc. ("TTI"), by its attorneys, Mayer, Brown, Rowe & Maw LLP, pursuant to Fed. R. Civ. P. 56, respectfully submits its Statement of Material Facts in support of its motion for summary judgment. The grounds and legal basis for its motion are set forth in the accompanying Memorandum in Support of Plaintiff TriStrata Technology, Inc.'s Motion for Summary Judgment.

1. On October 15, 2005, TTI and International Shield entered into a license agreement which settled a patent infringement action brought by TTI concerning International Shield's sale of certain anti-aging skin products (the "License Agreement"). (*See* generally Ex. 1, License Agreement).[1]

2. International Shield was granted a license to sell certain products under TTI's patents, provided that it pay TTI for past and future sales of the licensed products. (*Id.*)

3. The payment provisions, which are set forth in Article 4 of the License Agreement, require International Shield to pay TTI ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*Id.*,

---

[1] All exhibit numbers refer to the Appendix of Exhibits in Support of Plaintiff's Motion for Summary Judgment, attached herewith.

§ 4.01(a)). ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (*Id.*)

4. International Shield was also required to pay running royalties on the licensed products with minimum annual royalties of ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ commencing on April 1, 2006. (*Id.*, § 4.01(b) and (c)).

5. Abdel Attia (*a/k/a* Zizo Attia), the president and CEO of International Shield, signed the License Agreement on behalf of International Shield. (*Id.*)

6. Mr. Attia also signed an "Affidavit of Sales" in support of the License Agreement stating that he is over eighteen years of age, is the chief executive officer of International Shield, and that he has reviewed both the accounting records for International Shield's products and payment provisions of the License Agreement. (*Id.*, Schedule 4.01(a)).

7. As additional consideration to TTI, Mr. Attia executed a personal guaranty (the "Guaranty") in which he unconditionally guaranteed International Shield's payment obligations under the License Agreement and waived any and all guaranty defenses. (*See* Ex. 2, Guaranty, ¶¶ 1-3).

8. Mr. Attia also guaranteed any costs of collection, including attorney's fees. (*Id.*, ¶ 1).

9. International Shield made one up front payment of ▇▇▇▇▇ when the License Agreement was signed, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (*See* Ex. 3, Declaration of Brian Foley ("Foley Decl."), ¶ 7).

10. █████████████████████████████████████
████████████████████████████████████████
████ (*Id.*, ¶ 8).

11. Rather than be found in default, Defendants, through their attorney, proposed a forbearance agreement. (*Id.*, ¶ 9).

12. The forbearance agreement, dated March 1, 2006, provided that International Shield was to pay TTI on or before May 1, 2006: ████████████████
████████████████████████████████████████
██████ (the "Forbearance Agreement"). (*See* Ex. 4, Forbearance Agreement, ¶ 1).

13. The terms in the Forbearance Agreement were proposed by Mr. Groth, legal counsel for International Shield and Mr. Attia. (*See* Ex. 3, Foley Decl., ¶ 10).

14. The first draft of the Forbearance Agreement was prepared by Mr. Groth. (*Id.*, ¶ 11).

15. At no time did Mr. Groth communicate to TTI that Mr. Attia was suffering from duress, mental incapacity or was otherwise incapable of performing under the agreement. (*Id.*, ¶ 11).

16. ████████████████████████████████████
█████████████████████████ (*Id.*, ¶ 11). ██████
████████████████████████████████████████
████████████████████████ (*Id.*, ¶ 11).

17. ██████████████████████████████████
(*Id.*, ¶ 12).

18. International Shield asked for an additional 60 days to pay the amounts due, ███████████████████████████████████████████████ ███████████. (*Id.*, ¶ 13).

19. TTI agreed and the parties entered into an extension to the Forbearance Agreement, dated May 1, 2006, which required International Shield to pay ████████ by June 29, 2006, ████████████████████████████████████████████ (the "Extension to Forbearance Agreement"). (*See* Ex. 5, Extension to Forbearance Agreement, ¶¶ 1-2).

20. As with the original Forbearance Agreement, Mr. Groth drafted the Extension to Forbearance Agreement and gave no indication that Mr. Attia was suffering from any duress or mental incapacity at the time. (*See* Ex. 3, Foley Decl., ¶ 15).

21. International Shield failed to make any of the required payments by the June 29, 2006 deadline. (*Id.*, ¶ 16).

22. Brian Foley, TTI's outside counsel responsible for licensing, attempted to follow up with Mr. Attia's attorneys on numerous occasions, but received no response. (*Id.*, ¶ 17).

23. Mr. Foley sent an e-mail to Mr. Groth on July 17, 2006, informing him that TTI had no other choice but to enforce its rights against International Shield and against Mr. Attia under the Personal Guaranty. (*Id.*)

24. On July 21, 2006, Mr. Foley sent a letter to International Shield (addressed to Mr. Attia's attention) stating that the payment obligations had not been satisfied. (*Id.*, ¶ 18). Mr. Foley's letter further advised International Shield that it was no longer licensed under the agreements as a result of its default. (*Id.*)

25. On August 10, 2006, after receiving no response from Defendants to Mr. Foley's repeated inquiries, TTI filed this lawsuit seeking payment from International Shield and/or Mr. Attia of all due and owing amounts plus interest, costs and attorney's fees.

26. TTI withheld formal service but sent courtesy copies to Defendants' counsel via e-mail on August 11, 2006. (*Id.*, ¶ 19).

27. At Defendants' request, TTI agreed to an extension of time for Defendants to file their answer. Defendants' answer was filed on September 27, 2006. (*Id.*)

28. In their Answer, Defendants admit they failed to satisfy all their payment obligations under the License Agreement, Forbearance Agreement, Extension to Forbearance Agreement and Personal Guaranty. (*See* Defendants' Answer [D.I. 9], ¶¶ 7, 9, 11-13, 17-18, 25).

29. Defendants allege in their Answer, for the first time, that each of the four agreements signed by Mr. Attia are unenforceable because they were "signed by Defendant(s) while under improper duress and/or coercion and because Defendant Attia suffered a lack of mental capacity to execute" the referenced agreements. (*See* Defendants' Answer [D.I. 9], ¶¶ 7, 9, 11-13, 17-18, 25).

30. At no time during the negotiation or performance of the relevant agreements did Mr. Attia (or his attorneys) indicate to TTI (or its attorneys) that he was under duress, lacked the mental capacity or was otherwise incapable of entering into or performing under the agreements. (*See* Ex. 3, Foley Decl., ¶ 20). Nor did Defendants repudiate any of the agreements.

31. Defendants continued to accept the benefits under the License Agreement and subsequent forbearance agreements up and until the agreement was terminated by TTI on July 21, 2006. In particular, Defendants continued to sell AHA (alpha-hydroxy acid) products

covered by TTI's patents, paid the first installment for past sales, and negotiated forbearance agreements to extend their payment deadlines, among other things.

32. In fact, Defendants are still selling AHA products covered by TTI's patents through its online store, despite the fact that TTI terminated the License Agreement on July 21, 2006. (*See* Ex. 6, Declaration of Molly Sherlock, ¶ 3).

33. Mr. Attia is the president of a company that has sold millions of dollars worth of cosmetic products. (*See* generally Ex. 1, License Agreement, Schedule 4.01(a)).

34. Mr. Attia participated, on behalf of his company, in litigation with TTI for over a year and sat for a two-day deposition conducted by TTI's lawyers. (*See* Ex. 3, Foley Decl., ¶ 22).

35. Mr. Foley, who was present at the entire deposition, recalls no instance when Mr. Attia appeared to be suffering from any duress or mental incapacity (and the transcript reveals none either). (*Id.*)

36. To date, apart from International Shield's initial payment of ▌▌▌▌ none of the remaining amounts have been paid by Defendants under the License Agreement and subsequent forbearance agreements. (*Id.*, ¶ 23).

Dated: October 19, 2006

Respectfully submitted,

*/s/ Arthur G. Connolly, III*

Arthur G. Connolly, III (#2667)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141

Of Counsel:
Michael O. Warnecke
Douglas L. Sawyer
Aric S. Jacover
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 701-8602

Kevin M. McGovern
Brian T. Foley
McGovern & Associates
545 Madison Avenue, 15th Floor
New York, New York 10022
(212) 688-9840

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 19, 2006, I caused a true and correct copy of the foregoing to be served upon the following counsel of record in the manner:

**By Hand Delivery:**
Michael W. Modica, Esq.
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899

_____
Arthur G. Connolly, III (#2667)

#494739_1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2006, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record:

Michael W. Modica, Esq.
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899

/s/Arthur G. Connolly, III
Arthur G. Connolly, III (#2667)

#494733_1